**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **E. D. TREVILLER,**<br>Plaintiff,<br>vs.<br>**BARRY GOLDSTEIN, ET AL.,**<br>Defendants. | CASE NO. 17-cv-06684-YGR<br><br>**ORDER DISMISSING IN PART PLAINTIFF'S COMPLAINT PURSUANT TO SECTION 1915**<br><br>Re: Dkt. Nos. 23, 24 |

Plaintiff E.D. Treviller, proceeding *pro se*, brings this civil action against defendants Contra Costa County Civil Unit, Sergeant Foley and "Officers"; Barry Goldstein; Danielle Douglas; Terrye Davis a/k/a Terrye Daye; Richmond Police Department; and Hillside Garden Apartments. Now before the Court is Treviller's first amended complaint ("FAC"), which the Court screens pursuant to 28 U.S.C. section 1915(e)(2)(B) ("Section 1915") and concludes that portions of Treviller's complaint are deficient for the reasons set forth below. Accordingly, the Court **DISMISSES IN PART** Treviller's complaint.

**I.     BACKGROUND**

   **A.  Procedural Background**

Treviller initially filed two cases, the instant action (Case No. 17-cv-06684) and another, filed one week later (Case No. 17-cv-6787). Magistrate Judge Jaqueline Scott Corley granted Treviller's motion to proceed *in forma pauperis*, related the two actions and screened both complaints pursuant to Section 1915. (Dkt. Nos. 4, 7.)[1] In so screening Judge Corley determined that Treviller's claims fail Section 1915 review and set a deadline of March 5, 2018 for plaintiff to file any amended complaint. (Dkt. No. 7.) Treviller filed two timely declarations in each case,

---
[1] Unless otherwise noted, citations to docket entries refer to the docket in Case No. 17-cv-06684.

which are nearly identical, concerning allegations in support of his Section 1983 claims. (Case Nos. 17-cv-06684 and 17-cv-6787 Nos. 9.) Treviller later filed a third declaration regarding his eviction. (Case No. 17-cv-6787 Dkt. No. 12.)

On April 26, 2018, Judge Corley issued a report and recommendation that Treviller's Section 1983 claims were sufficient to survive Section 1915 review but recommending that his wrongful eviction and intentional infliction of emotional distress claims be dismissed with leave to amend. (Dkt. No. 10.) The Court adopted Judge Corley's recommendation, to which no party filed an objection, on May 18, 2019. (Dkt. No. 12.) The order required Treviller to file any amended complaint in Case No. 17-cv-06684, within twenty-eight days of the order, or June 15, 2018. (*Id.*) On June 19, 2018, the Court extended that deadline to July 17, 2018. (Dkt. No. 14.) No such complaint was filed.

On July 31, 2018, the Court dismissed Treviller's case without prejudice for failure to prosecute. (Dkt. No. 19.) On September 7, 2018, Treviller filed, in Case No. 17-cv-06787, a motion for reconsideration of the order dismissing his case, which the Clerk subsequently filed in Case No. 17-cv-06684 at the direction of the Court. (Dkt. No. 22.) The Court granted Treviller's motion for reconsideration and instructed him to file his amended complaint by October 15, 2018. (Dkt. No. 21.) Treviller timely filed. (Dkt. Nos. 23, 24 ("FAC").)

**B. Factual Background**

Plaintiff appears to allege as follows:

Prior to the initial filing of this case on November 27, 2017, defendants served on Treviller a writ of possession at 10701 San Pablo Avenue, #27, El Cerrito, CA 94530 (the "Apartment"). (FAC at 2.) When the police department arrived to evict Treviller, they stepped on his glasses and did not allow him to retrieve his seizure medication, which he needed. (*Id.*) Prior to the instant complaint, Treviller and his landlord(s), against whom he brings this action,[2] came to an agreement involving partial payment. (*Id.*) Landlord Defendants accepted partial payment from

---

[2] The Court notes that it is not clear precisely to whom plaintiff refers as "apt. def." The Court assumes that it could be any or all of Mr. Barry Goldstein, Mrs. Danielle Douglas, Mrs. Terrye Davis "AKA" Terrye Daye, and Hillside Garden Apartments. Hereinafter, the Court refers to "apt. def." as Landlord Defendants.

1 Treviller with the understanding that the balance would be paid at his next payday. (*Id.*)
2 However, on the day the balance came due, Landlord Defendants served Treviller with an
3 unlawful detainer. (*Id.*)

Prior to the execution of the writ of possession, Treviller filed two bankruptcy notices as well as a "federal prohibitory injunction" to stop the Landlord Defendants from evicting him illegally. (*Id.* at 3.) However, Landlord Defendants still evicted Treviller. (*Id.*) In so evicting, they disregarded the second bankruptcy notice that Treviller filed to extend the automatic stay and were "determine[d] to evict the plaintiff, no matter what." (*Id.*)

Landlord Defendants knew that Treviller "was still under" the bankruptcy protection clause, but they continued to call him and try to convince him to move out of the apartment. (*Id.*) Treviller did not move. (*Id.*) Once the bankruptcy notices were "in its last stage," Sargent Foley and his staff called Treviller trying to persuade him to drop the last bankruptcy filing. (*Id.*) Sargent Foley then stated that "he[']s been doing bankruptcy classes since the county send him to classes, so that 2nd [bankruptcy] notice don't mean much to him."[3] (*Id.*)

Landlord Defendants invaded Treviller's privacy on many occasions. (*Id.* at 4.) They hid in the attic on multiple occasions to determine if Treviller was smoking marijuana. (*Id.*) "[A]t all times of night and day," they would spy on Treviller by "standing directing in front of the apartment, watering wood chips to see if they could hear anything in which can force them to harm the plaintiff, illegal." (*Id.* (quoted verbatim).) The apartment owner is of Middle-eastern descent and "didn't care for [b]lack people that much, other than making money off of them." (*Id.*) The apartment owner told the residential manager to check Treviller because he "was by the[] pray meeting area." (*Id.*) The apartment owner also instructed the residential manager to follow Treviller with a camera to determine what the plaintiff was doing in the prayer area "where he lived." (*Id.*) Landlord Defendants have been harassing Treviller ever since he moved into the Apartment, "[l]ike playing middle and he say the music [was] to[o] loud, but it was only 2 or 3 in the afternoon, he [has] done this 3 times." Landlord Defendants have also continued to engage in

---

[3] Plaintiff cites to violations of "Civil Code 1954, Cal. Civ. Code Section 3485, 1161, 1950.5 and Cal. Civ. Code 1940.2." (*Id.* at 3-4.)

"racist tactics" including "racist letters by the plaintiff['s] front door inside the gated area where the plaintiff stay on the property." (*Id.*)

Defendants have also engaged in "total disregard[] of illegal treatment of the plaintiff" including violations of his civil rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution. (*Id.* at 5.) Defendants have also refused to obey "any orders from state or federal agencies, such as the U.S. Federal Courts and the U.S. Bankruptcy Courts." (*Id.*)

Police defendants have retaliated against and racially profiled Treviller for his "expression as needing to be protected, an adverse reaction that would determine a person or ordinary firmness was taken against [Treviller], the adverse action was taken as a direct result of [Treviller's] expression as a black male[.]" (*Id.*) Police defendants also engaged in misconduct, including coercion, "false confession," intimidation, false arrest, and falsification of evidence. (*Id.*)

Defendants have also engaged in "[d]iscrimination-the unjust or prejudice bias, bigotry, intolerance, unfairness, and racial discrimination" as well as "[u]nfair, deceptive, abusive, acts or practices" in violation of the Dodd-Frank Act and "[s]lavery mistreatment conduct[.]" (*Id.* at 5-6.)

Defendants violated the Americans with Disabilities Act ("ADA") because they "intentionally would not allow" Treviller to retrieve his medication during the illegal eviction on November 21, 2018. (*Id.* at 6.) As a result, Treviller suffered a seizure, swollen gums, and tension in his body. (*Id.*) The Contra Costa County officers "stood around" to make sure that Treviller did not return to the apartment for seventeen minutes after the eviction. (*Id.*) The officers allowed Treviller only five minutes in the apartment and as a result he was not able to collect the "things he may need to live right." (*Id.*) In so doing, the officers broke the federal laws that allow patients access to their medication, including Cal. Health and Safety Code Section 123100, *et seq.*, Cal. Health and Safety Code 123110 *et. seq*., 45 LFR 164.524, 45 LFR 164.501, and 45 LFR 164.502(G). (*Id.*)

Moreover, defendants "will be trying to kill or harm the plaintiff together with the already illegal acts" that the defendants committed. (*Id.* 6-7.)

\\

4

## II. LEGAL STANDARD

A court is under a continuing duty to dismiss a case filed without payment of the filing fee whenever it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). If the Court dismisses a case pursuant to section 1915(e)(2)(B), the plaintiff may still file the same complaint by paying the filing fee. This is because the court's Section 1915(e)(2)(B) dismissal is not on the merits, but an exercise of the court's discretion under the IFP statute. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

To make the determination under 28 U.S.C. section 1915(e)(2)(B), courts assess whether plaintiff states an arguable factual and legal basis for the asserted wrong, "however inartfully pleaded." *Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984). Courts have the authority to dismiss complaints founded on "wholly fanciful" factual allegations for lack of subject matter jurisdiction. *Id.* at 1228. A court can also dismiss a complaint where it is based solely on conclusory statements, naked assertions without any factual basis, or allegations implausible on their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *see also Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam).

Federal courts are courts of limited jurisdiction. They have no power to consider claims for which they lack subject-matter jurisdiction. *See Chen-Cheng Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992). While California superior courts are courts of general, unlimited jurisdiction and can render enforceable judgments in practically any type of case, federal courts can only adjudicate cases that the Constitution or Congress authorizes them to adjudicate. Cases where the federal court has jurisdiction are those where there is a diversity of citizenship (where the parties are from different states), a federal question (arising under the Constitution, laws, or treaties of the United States), or in which the United States is a party. *See, e.g.*, *Kokkonen v. Guardian Life Insur. Co. of Am.*, 511 U.S. 375 (1994). Federal courts are presumptively without jurisdiction over civil cases and the burden of establishing jurisdiction rests upon the party asserting it. *Id.* at 377. If the Court determines that subject matter jurisdiction is lacking, the Court must dismiss the case. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th

5

Cir. 1983); Fed. R. Civ. P. 12(h)(3). Under 28 U.S.C. § 1915(e)(2)(B), the Court is required to dismiss an action that fails to state a claim upon which relief may be granted.

"[A] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quotations omitted).

### III. DISCUSSION

Treviller appears to identify a number of federal and state law claims. Although Treviller does not explicitly mention Section 1983, he does refer to violations of various amendments to the Constitution. (*See* FAC at 5.) Treviller also alleges violations of the ADA. (*Id.* at 6.) Treviller points to three state law causes of action: (1) illegal execution of a writ of possession, (2) illegal entry, and (3) invasion of privacy. (*Id.* at 2-4.) The Court will address each in turn.

#### A. Federal Claims[4]

##### 1. Section 1983 Claims

Treviller alleges that defendants violated his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (FAC at 5.) However, he does not, and as explained below, cannot, state a Section 1983 claim for violation of the Fourth, Fifth, Sixth, or Eighth Amendments. Accordingly, of Treviller's federal claims, only his Fourteenth Amendment claim survives Section 1915 review.

The Fourth Amendment proscribes "unreasonable searches and seizures." U.S. Const. amend. IV; *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995). Treviller does not allege that defendants conducted an unreasonable or otherwise unlawful search or seizure. (*See* FAC.) Accordingly, the Court **DISMISSES** Treviller's claim that defendants deprived him of his Fourth Amendment rights in violation of Section 1983. Treviller does, however mention "false arrest" and illegal entry of his dwelling. (*Id.* at 3, 5.) Accordingly, out of an abundance of caution, the Court affords plaintiff leave to amend his complaint to the extent that he can allege a claim for an

---

[4] Treviller's FAC also cites to the Dodd-Frank Act in reference to his allegation of "[u]nfair, deceptive, or abusive acts or practices." (FAC at 6.) The Dodd-Frank Wall Street Reform and Consumer Protection Act does not apply to the facts Treviller has alleged. *See* 12 U.S.C. §5300. Accordingly, to the extent Treviller attempts to state a claim under the Dodd-Frank Act, that claim is **DISMISSED WITH PREJUDICE**.

6

unreasonable search or seizure in violation of the Fourth Amendment.

The Fifth Amendment guarantees a right to a grand jury, freedom from double jeopardy, freedom from self-incrimination, due process, and eminent domain. U.S. Const. amend. V. "The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government—not those of state or local government." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)). Treviller does not allege that he was subject to a criminal prosecution without indictment of a grand jury or in violation of the double jeopardy clause, nor does he allege that defendants caused or attempted to cause him to incriminate himself or took his property for public use without just compensation. (*See* FAC.) Moreover, to the extent that Treviller alleges violations of due process and equal protection, he does not aver that the *federal government* so acted. (*See id.*) Accordingly, the Court **DISMISSES WITH PREJUDICE** Treviller's claim that defendants deprived him of his Fifth Amendment rights in violation of Section 1983.

The rights afforded under the Sixth Amendment, including a speedy trial, a fair jury, an attorney, and confrontation of a witness, apply only to criminal defendants. *See e.g., Betterman v. Montana*, 136 S. Ct. 1609, 1612 (2016) (holding that the Sixth Amendment right to a speedy trial attaches at arrest). Treviller has not alleged that he was arrested or otherwise criminally prosecuted as a result of defendants' alleged conduct, or otherwise. (*See* FAC.) Accordingly, the Court **DISMISSES WITH PREJUDICE** Treviller's claim that defendants deprived him of his Sixth Amendment rights in violation of Section 1983.

The Eighth Amendment's prohibition on cruel and unusual punishment attaches only after "a formal adjudication of guilt in accordance with the due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671-72 n. 40 (1977) (noting that for allegations of punishment without such an adjudication, the "pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment"). Accordingly, the Court **DISMISSES WITH PREJUDICE** Treviller's claims that defendants deprived him of his Eighth Amendment rights in violation of Section 1983.

Therefore, only Treviller's Fourteenth Amendment Section 1983 claim survives Section 1915 review.

### 2. Americans with Disabilities Act

Treviller appears to claim that defendants failed to provide him reasonable accommodation in violation of the ADA. (*See* FAC at 6.) To state a *prima facie* case for failure to provide a reasonable accommodation under the ADA, Austin must plead facts showing that (1) he had a qualifying disability; (2) he *actually requested* an accommodation from the Landlord Defendants; (3) the requested accommodation was reasonable; and (4) the request was refused. *Huynh v. Harasz*, 2016 WL 2757219, at *11 (N.D. Cal. May 12, 2016). Treviller's ADA claim fails for two reasons: (1) he does not allege that he had a *qualifying* disability under the ADA; and (2) nor does he allege that he requested that the Landlord Defendants provide reasonable accommodation of that disability. (*See* FAC.)

In order to allege that he had a qualifying disability, Treviller must, and does not, allege (1) that he had a physical or mental impairment, (2) that his alleged impairment substantially limits his ability to perform an identified life activity; and (3) that the particular life activity on which he relies constitutes a major life activity, as each defined under the ADA. *See Gribben v. Utd. Parcel Serv., Inc.*, 528 F.3d 1166, 1169 (9th Cir. 2008) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)). Further a plaintiff must "must allege [the] disability with specificity" and "specify what major life activities his disability limits." *Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 907-08 (N.D. Cal. 2015); *see also Bell v. Univ. of Cal. Davis Med. Ctr.*, 2013 WL 1896318, at *4 (E.D. Cal. May 6, 2013) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998); *Gribben v. Utd. Parcel Serv., Inc.*, 528 F.3d 1166, 1169 (9th Cir. 2008)). Treviller has not alleged facts that show he notified defendants of his purported disability or requested a relevant reasonable accommodation.

Accordingly, the Court **DISMISSES** Treviller's ADA claim with leave to amend to allow plaintiff to plead additional facts about the allege failure to provide accommodation in violation of the ADA.

\\

\\

**B. State Causes of Action[5]**

1. <u>Illegal Execution of Writ of Possession</u>

In alleging "illegal[] execution of a writ of possession," Treviller appears to claim that his landlord wrongfully evicted him. "California Civil Code [Section 789.3] prohibits landlords from unlawfully evicting tenants." *Fung v. Ray*, 2018 WL 423504, at *5 (N.D. Cal. Jan. 16, 2018). To establish a claim for wrongful eviction, Treviller must allege that he had a tenancy interest in the property. *See* Cal. Civ. Code § 789.3(b); *Schwartz v. United States*, 593 Fed.Appx. 663, 664 (9th Cir. 2015). Here, Treviller has shown that he has a tenancy interest because he alleges that Hillside Gardens accepted his first partial payment but initiated eviction proceedings the day his second partial payment was due, in violation of the parties' agreement. (*See* FAC at 2.)

"A landlord violates Section 789.3 when the landlord, with intent to terminate the tenant's occupancy under the lease, willfully (1) prevents the tenant from gaining reasonable access to the property by changing the locks or using a bootlock or by any other similar method or device; (2) removes outside doors or windows; or (3) removes from the premises the tenant's personal property, the furnishings, or any other items without the prior written consent of the tenant." *Fung*, 2018 WL 423504, at *5 (citing Cal. Civ. Code. §§ 789.3(b)(1)-(3)). Treviller alleges that during the eviction, officers from Contra Costa County, Civil Unit "stood around" to ensure that Treviller could not renter the Apartment and allowed him only five minutes to gather his things. (*See* FAC at 6.) Accordingly, Treviller's claim of wrongful eviction survives Section 1915 review.

2. <u>Illegal Entry</u>

Under California Civil Code Section 1954, a landlord may enter a dwelling unit only in a limited number of cases. Cal. Civ. Code § 1954. Treviller does not allege that Landlord actually entered his dwelling unit. (*See* FAC.) Although he does allege that the landlord would regularly use the attic to spy on him, he has not alleged that the attic is part of his dwelling unit. (*See id.* at

---

[5] The Court notes that although Treviller's Fourteenth Amendment Section 1983 claim survives the instant motion, and the Court has given plaintiff leave to amend with respect to his ADA claim, the Court **RESERVES** on whether it will exercise supplemental jurisdiction over Treviller's state law claims pursuant to *United Mine Workers v. Gibbs*. *See* 383 U.S. 715 (1966).

4.) Accordingly, the Court **DISMISSES** Treviller's claim of illegal entry with leave to amend. Treviller may file an amended complaint to the extent that he can allege that his landlord entered his dwelling unit in violation of Section 1954.

### 3. Invasion of Privacy

Article I Section I of the California Constitution recognizes certain "inalienable rights," including the right of privacy. To state a claim for invasion of privacy, a plaintiff must allege: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct that amounts to a serious invasion of the protected privacy interest. *In re Yahoo Mail Litigation*, 7 F.Supp.3d 1016, 1039 (N.D. Cal. 2014). In determining the offensiveness of an invasion of a privacy interest, courts consider "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Safari Club International v. Rudolph*, 862 F.3d 1113, 1129 (9th Cir. 2017) (quoting *Wilkins v. National Broadcasting Co., Inc.*, 71 Cal.App.4th 1066, 1075-76 (1999)).

Treviller alleges that the landlord defendants spied on him while he was in the Apartment and the surrounding area, a space in which he, as a tenant, likely has a legally protected privacy interest and a reasonable expectation of privacy. Accordingly, Treviller's claim of invasion of privacy survives Section 1915 review.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **DISMISSES WITH LEAVE TO AMEND** Treviller's Section 1983 claim of violation of the Fourth Amendment. Treviller may file an amended complaint to the extent that he can allege that someone acting under the color of state-level or local law conducted a search or a seizure in violation of the Fourth Amendment.

2. The Court **DISMISSES WITH PREJUDICE** Treviller's Section 1983 claims of violations of the Fifth, Sixth, and Eighth Amendments. To the extent that Treviller files an amended complaint, he may not assert these claims again.

3. The Court **DISMISSES WITH LEAVE TO AMEND** Treviller's ADA claim. Treviller

    may file an amended complaint asserting an ADA claim to the extent that he can allege that he had a qualifying disability under the ADA and that he requested reasonable accommodation of that disability.

  4. The Court **DISMISSES WITH LEAVE TO AMEND** Treviller's claim of illegal entry under California Civil Code Section 1954. Treviller may file an amended complaint asserting an illegal entry claim to the extent that he can allege that his landlord actually entered his dwelling unit in violation of Section 1954.

Treviller's claims of illegal execution of a writ of possession, invasion of privacy, and violation of the Fourteenth Amendment under Section 1983 survive Section 1915 review. To the extent Treviller files an amended complaint, he must do so by no later than **twenty-eight (28) days** from the date of this Order. Treviller's failure to file an amended complaint his amended complaint or to correct the aforementioned deficiencies outlined above will result in dismissal of Treviller's claims as outlined above.

  The Court advises plaintiff that a Handbook for Pro Se Litigants, which contains helpful information about proceeding without an attorney, is available in the Clerk's office or through the Court's website, http://cand.uscourts.gov/pro-se.

  The Court also advises plaintiff that additional assistance may be available by making an appointment with the Legal Help Center. **There is no fee for this service**. To make an appointment with the Legal Help Center in San Francisco, Plaintiff may visit the San Francisco Courthouse, located at 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, California, 94102, or call 415/782-9000 (ext. 8657). To make an appointment with the Legal Help Center in Oakland, plaintiff may visit the Oakland Courthouse, located at 1301 Clay Street, 4th Floor, Room 470S, Oakland, California, 94612, or call 415/782-8982. The Help Center's website is available at http://www.cand.uscourts.gov/helpcentersf.

  **IT IS SO ORDERED.**

Dated: April 2, 2019

              **YVONNE GONZALEZ ROGERS**
              **UNITED STATES DISTRICT COURT JUDGE**